UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW MADAJSKI,

        Plaintiff,                CIVIL ACTION NO. 12-10656

  vs.                                DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:** This Court recommends that Plaintiff's motion for remand pursuant to sentence four (docket no. 10) be denied, Defendant's motion for summary judgment (docket no. 11) be granted, and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

In June and July of 2010 Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging disability beginning November 20, 2009. (TR 133-44). The applications were denied and Plaintiff filed a timely request for a *de novo* hearing. On June 28, 2011 Plaintiff appeared with counsel in Mt. Pleasant, Michigan and testified at a hearing held by Administrative Law Judge (ALJ) James J. Kent. (TR 31-54). Vocational Expert (VE) Paul Delmar, Ph.D. also appeared and testified at the hearing. In a July 21, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because there are a significant number of jobs existing in the national economy that he can perform. (TR 14-26). The

1

Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review. (TR 1-3).

## III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was thirty-one years old on his alleged disability onset date. He has a high school education and attended special education classes throughout his schooling. (TR 35, 38). Plaintiff states that he has dyslexia or a reading disability and he cannot read or write. (TR 35). He claims he has a poor memory and difficulty concentrating and maintaining focus, although he testified that he was able to remember the sequence of events he needed to complete in order to perform on his painting job. (TR 36-39, 47). He testified that his wife reads letters he receives from Social Security and with her help he is able to understand only a small amount of the information contained in the letters. (TR 37). He claims that his wife filled out his disability forms for him. He also claims that his wife handles the bills and any paperwork that has to be completed in relation to his three children. Plaintiff testified that he would not be capable of writing a short letter to a friend because he does not know how to spell. He claims he is unable to read a restaurant menu. (TR 37-38).

Plaintiff states that he has constant knee pain and upper and lower back pain. (TR 41-42). He claims that he missed work once or twice a week, and sometimes more, due to pain. (TR 44). He states that he recently spent the day walking around the Frankenmuth zoo but he had to take frequent rest breaks. He also claims that the day after he went to the zoo his legs gave out on him. Plaintiff testified that he is unable to twist, bend, crouch, or crawl. (TR 42).

Plaintiff testified that quite a bit of his day is spent sitting in a chair relaxing. (TR 45). He reports that he can sit approximately one hour before needing to stand, he lays down periodically

2

during the day to relieve pain, and he stands approximately fifteen to twenty minutes at a time before he needs to sit. (TR 45-46).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed the medical evidence and will summarize limited portions of the record below. The record shows that Plaintiff has a history of obesity, back, neck, shoulder, and knee pain with complaints that his knee gives way under pressure. It also shows that Plaintiff is illiterate and he has a learning disability.

In March 2007 an MRI of Plaintiff's lumbar spine showed anterior wedging of the T9, T10, T11, and T12 vertebral bodies of unknown chronicity, but no evidence of acute compression fracture. (TR 307). An August 2010 x-ray of the lumbar spine revealed stable degenerative disc disease at L4-L5 and L5-S1 as well as left facet arthropathy at these two levels. (TR 350). An x-ray of the thoracic spine dated August 2010 revealed mild to moderate degenerative osteoarthritis of the lower dorsal spine. (TR 351, 399-402). A May 2011 MRI of the cervical spine revealed uncovertebral joint and facet hypertrophy causing moderate to severe right neural foraminal narrowing at C4-5, with no herniation, canal stenosis, or nerve root impingement. (TR 398).

In March 2007 an x-ray of the right knee revealed minimal degenerative joint disease of the patellofemoral joint. (Tr 307). An MRI of the right knee in April 2007 revealed subacute or chronic osteochondral fracture of the lateral femoral condyle. (TR 306). An August 2010 x-ray of the left knee was unremarkable. (TR 350).

A September 2010 physical residual functional capacity assessment completed by Terri Rytkonen, a state agency single decision maker, found that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, stand/walk/or sit six hours in an eight hour workday,

with unlimited push/pull activities. (TR 368). The examiner found that Plaintiff could always climb ramps, stairs and balance; frequently stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; and he should avoid even moderate exposure to environmental hazards.

In March 2011 Dr. S. Sriharan, neurosurgeon, indicated that Plaintiff was not a surgical candidate and his back pain should be treated conservatively through epidural shots and physical therapy. (TR 384). On examination Dr. Sriharan noted that Plaintiff's arms showed good strength, sensation, and deep tendon reflexes, with vaguely positive Hoffmann's bilaterally. Plaintiff had a restricted range of flexion and extension of the lumbar spine, but he was able to heel and toe walk without difficulty. (TR 386). Plaintiff reported a pain level of seven on a ten point scale, and complained of knee pain, worse on the right than on the left, and increased by walking, driving, bending, and twisting. (TR 393). Plaintiff was reported to be five foot ten inches tall weighing two hundred seventeen pounds.

School records from Bay City Public Schools dated November 1, 1994 show that Plaintiff was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) as a tenth grade high school student. (TR 277-82). The report from the school psychologist states that Plaintiff was certified as learning disabled and he took all academic classes in the special education program. (TR 278). Reading was particularly difficult for Plaintiff. The report shows that Plaintiff obtained a verbal IQ score of 75, a performance IQ score of 92, and a full scale IQ score of 81. The school psychologist noted that Plaintiff was functioning within the average nonverbal intellectual range. Plaintiff's reading recognition skills were measured at a high first grade level, his reading comprehension was measured at a second grade level, his math skills were measured at a seventh grade level, and he displayed very limited sight vocabulary. (TR 279-80).

On December 12, 1999 Dr. Steven Ingersoll, an optometrist, examined Plaintiff and determined that his reading difficulties were caused by visual anomalies. (TR 284-86). Dr. Ingersoll opined that Plaintiff was "simply not doing the same thing that successful readers do when confronted with written text." (TR 286). He recommended that Plaintiff improve his visual motor and visual cognitive skills and offered to design a treatment program to meet Plaintiff's needs.

Plaintiff presented to William Leichner, M.S., L.L.P. on October 5, 2001 at the age of twenty-three for a psychological evaluation to assess his learning style. (TR 287-93). A WAIS-3 intelligence test was administered revealing a verbal IQ of 77, a performance IQ of 91, and a full scale IQ of 82. (TR 289). Mr. Leichner opined that Plaintiff's test performance suggested that he was generally socially adept and aware of relevant legal and social standards, and he had borderline ability to recall factual information. Plaintiff's reading, writing, and reading comprehension skills scored at the first and second grade level. Mr. Leichner opined that Plaintiff would have considerable difficulty completing basic daily functions such as grocery shopping, paying bills, completing employment applications, and understanding a want ad. He found that Plaintiff has a severe reading disorder and a disorder of written expression and he assigned a GAF of 85. (TR 292).

Dr Ron Marshall completed a mental residual functional capacity assessment dated September 15, 2010. (TR 363-82). Dr. Marshall found that Plaintiff had moderate difficulties maintaining concentration, persistence or pace, mild restrictions in activities of daily living, and no difficulties maintaining social functioning with no episodes of decompensation. (TR 366). He opined that Plaintiff was moderately limited in his ability to remember and carry out detailed instructions, and maintain attention and concentration for extended periods of time. He concluded

that Plaintiff was capable of following simple instructions and completing rote tasks within his medical limitations, but he may have difficulty retaining complex instructions.

## IV. VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as a painter/sandblaster was medium exertional level, and medium to heavy as performed, with a specific vocational preparation (SVP) code of 2; past work as a tire changer was heavy exertional level, and medium as performed, with an SVP code of 3; past work in auto detailing was unskilled medium work, performed at a light exertional level, with an SVP of 2; past work as a cemetery worker was medium exertional work with an SVP code of 4; and past work in highway maintenance was medium exertional work with an SVP code of 3.[1]  (TR 49-50).

The ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff, who was limited to light work, with no climbing of ladders, ropes, or scaffolds; frequently able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and able to perform simple, routine, and repetitive tasks. (TR 50).  The VE testified that the individual could perform Plaintiff's past work in auto detailing.  The ALJ further testified that the individual could perform jobs in small parts assembly, as an assembly press operator, and as an inspector, comprising approximately 20,000 jobs in the State of Michigan.  (TR 51).

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)).  In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704, at *3.

Next, the ALJ asked the VE to assume an individual who was limited to sedentary jobs with the following limitations: (a) he could only stand or walk fifteen to twenty minutes; (b) he could only sit for up to fifteen to thirty minutes before needing a sit/stand option; (c) he cannot read or write at a functional level; (d) he is able to perform simple routine and repetitive tasks in a work environment free of fast-paced production requirements, and (e) his work can only involve simple work-related decisions and routine workplace changes. (TR 51). The VE testified that this individual could not perform Plaintiff's past work, but could work in the manufacturing industry in final assembly, small parts assembly, or inspector, comprising approximately 7,500 jobs in the State of Michigan. (TR 52).

In addition to the above limitations, the VE testified that if the individual would require six-plus unscheduled work breaks in an eight hour workday during which he would have to lay down or sit to relieve pain for up to ten minutes each break, there would be no jobs available that the individual could perform. (TR 52). In addition, if the individual would be absent from work from four to eight days each month because of his symptoms, overall condition, and medication side effects, he would not be able to engage in competitive full time work. Finally, the VE testified that if the ALJ found Plaintiff's testimony and claims regarding his physical and mental conditions and functional limitations to be credible and accurate, and his limitations combined in such a way that Plaintiff would be unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days and forty hours a week, the individual would be precluded from work.

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since November 20, 2009, and suffered from the severe impairments of learning disorder, illiteracy,

obesity, and back, neck, shoulder, and knee pain, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 14-18). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except that he can stand and/or walk fifteen to twenty minutes at a time and sit up to thirty minutes at a time; he requires the option to alternate between sitting and standing; he must not climb ladders, ropes, or scaffolds; he may frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he is unable to read or write at a functional level; he is able to perform simple, routine, repetitive work tasks in a work environment free of fast-paced production requirements; and he is able to perform work involving simple work-related decisions and routine workplace changes. (TR 18-24). The ALJ concluded that Plaintiff was unable to perform past relevant work but he could perform a significant number of jobs that exist in the national economy. (TR 24-26). Consequently the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from November 20, 2009, the alleged onset of disability, through July 21, 2011, the date of the ALJ's decision.

**VI.     LAW AND ANALYSIS**

**A.      Standard Of Review**

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert

testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination and step five finding. He claims that the ALJ afforded considerable weight to the assessment of Mr. Leichner but did not account for all of Mr. Leichner's findings in the RFC or in the hypothetical questions presented to the VE. Specifically, Plaintiff argues that the ALJ failed to take into account Mr. Leichner's assessment that Plaintiff had auditory perception problems that would affect the rate at which he could acquire or process new material, or his finding that Plaintiff will need a slower presentation of verbal information to facilitate comprehension and a restriction from written instructions altogether.

As previously discussed, Mr. Leichner examined a twenty-three year old Plaintiff for the purpose of assessing Plaintiff's learning style. Mr. Leichner concluded that Plaintiff's academic limitations will likely cause him considerable difficulty in completing basic daily functions like grocery shopping, paying bills, completing employment applications, and understanding a help wanted ad. He found that Plaintiff's receptive language skills were quite good but he had some limitations in auditory perception such that the rate at which Plaintiff can digest new material will be below average. He also found that Plaintiff's comprehension would be better facilitated with a slower presentation of verbal information.

Mr. Leichner is a limited licensed psychologist consequently he is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.913(a). Furthermore, his opinion is not considered a "medical opinion"as defined in the Act.    20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Nevertheless, the Commissioner recognizes that opinions from sources that are not "acceptable medical sources" may contain valuable information that may be useful in assessing the severity of a claimant's impairments. 20 C.F.R. §§ 404.1513(d); 416.913(d); Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  SSR 06–3p clarifies that other source opinions "may be based on special knowledge of the individual" and may be important sources of information in determining the severity of the claimant's impairments and how the impairments affect the claimant's functional capabilities.  SSR 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

The ALJ considered Mr. Leichner's evaluation and accorded it considerable weight after finding that the assessment was consistent with and supported by the weight of the medical evidence. The ALJ then incorporated at least portions of Mr. Leichner's findings into the RFC.  In doing so, the ALJ in the RFC restricted Plaintiff to only those jobs that can be performed by an individual who is incapable of reading or writing at a functional level.  In addition, the ALJ included in the RFC a limitation that Plaintiff make only simple work-related decisions in an environment that required only routine workplace changes.  The ALJ further found that Plaintiff was restricted to jobs that required only simple, routine, repetitive work tasks in an environment free of fast-paced production requirements.  In the same way, the ALJ presented hypothetical questions to the VE that included the limitations that the hypothetical individual cannot read or write at a functional level, he is unable to perform anything more than simple routine and repetitive tasks in a work environment free of fast-paced production requirements, and he requires work that involves only simple work-related decisions and routine workplace changes.

The RFC assessment is the adjudicator's ultimate finding about what the claimant can do

11

despite his limitations. SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). The ALJ derives the RFC after considering the medical and other evidence in the record. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and provide citations to the evidence of record. SSR 96-8p, 1996 WL 374184 (July 2, 1996). In determining the RFC, the ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Here, the ALJ reviewed and discussed the medical and nonmedical evidence of record. The ALJ acted within his authority and crafted an RFC that accounted for Plaintiff's limitations. The hypothetical questions presented to the VE also accurately reflect Plaintiff's credible limitations. Although the ALJ did not recite Mr. Leichner's findings verbatim in the RFC and hypothetical questions, he was not required to do so. After reviewing the record, the undersigned finds that substantial evidence supports the ALJ's RFC determination and step five finding.

Next, Plaintiff argues that the ALJ failed to articulate evidentiary support for the RFC determination with regard to Plaintiff's physical limitations. The undersigned disagrees. The ALJ addressed the evidence of record which included medical opinions, diagnostic testing, and opinions and statements from nonmedical sources. In so doing, the ALJ acknowledged Plaintiff's physical limitations and discussed evidence showing both normal and impaired physical findings. The ALJ pointed to evidence showing that despite Plaintiff's physical impairments and complaints of back, neck, shoulder, and knee pain, he received only conservative treatment. The ALJ further noted that Plaintiff was able to perform his activities of daily living, albeit slowly as Plaintiff contends. The

evidence of record shows that despite Plaintiff's complaints of pain and known physical impairments, he was observed to heel and toe walk without difficulty, he presented with good strength and bilateral sensation in his bilateral lower extremities, good motor strength in all extremities, he walked without an assistive device, and he had intact reflexes among other things. In addition, the ALJ discussed the fact that Plaintiff's x-rays and MRI results did not support the severity of limitations claimed by Plaintiff.

The ALJ gave credence to evidence showing that Plaintiff had serious physical limitations, but not wholly disabling limitations, by limiting Plaintiff to sedentary work. Indeed, the ALJ properly considered the evidence and limited Plaintiff to sedentary work, with the exception that Plaintiff can stand and/or walk fifteen to twenty minutes at a time and sit up to thirty minutes at a time with a sit/stand option, he must not climb ladders, ropes, or scaffolds, but he may frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The undersigned finds that the ALJ appropriately articulated evidentiary support for the RFC determination with regard to Plaintiff's physical limitations and based his determination on substantial evidence in the record.

Next, Plaintiff challenges the ALJ's conclusion that Plaintiff's testimony and claims were not fully credible with regard to Plaintiff's receipt of unemployment benefits from January 2010 through December 2010. During the hearing the ALJ questioned Plaintiff about his unemployment benefits. The ALJ asked Plaintiff how it was that he could certify that he was able to, available for, and actively seeking full-time work for purposes of his unemployment benefits claim, yet at the same time claim that he was not capable of working full-time for purposes of his Social Security disability benefits claim. Plaintiff testified that he misunderstood the requirements for unemployment benefits and believed he was only required to state that he was willing to work.

Plaintiff contends that the ALJ's credibility assessment was one-sided and improper because he failed to consider Plaintiff's testimony on this subject.

The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because it is the ALJ who has the unique opportunity to observe the demeanor of the witness. *See Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993). The opinion of the ALJ shows that he considered Plaintiff's testimony with regard to his unemployment benefits but he was not persuaded by Plaintiff's explanation. The fact that the ALJ failed to accept Plaintiff's explanation does not make his credibility assessment one-sided or improper. The undersigned finds that Plaintiff has not shown that the ALJ's assessment of Plaintiff's credibility was flawed.

**<u>REVIEW OF REPORT AND RECOMMENDATION</u>**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection

must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 29, 2012        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 29, 2012        s/ Lisa C. Bartlett
                               Case Manager